FILED
CLERK

8/7/2013 10:55 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT S. BUCKLEY,

      Plaintiff,

  -against-

STATE OF NEW YORK, STATE UNIVERSITY
OF NEW YORK AT STONY BROOK, SAMUEL
L. STANLEY, JR., MARK MURPHY, SAMANTHA
THOMAS, JAMES O'CONNOR, TERRENCE
HARRIGAN, BARBARA CHERNOW, and
LYNN M. JOHNSON,

      Defendants.
----------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
11-CV-5512 (ADS) (AKT)

APPERANCES:

**Joseph C. Stroble, Esq.**
*Attorney for the Plaintiff*
40 Main Street
Sayville, NY 11782

**New York State Attorney General, Nassau Regional Office**
*Attorneys for the Defendants*
200 Old Country Road, Suite 240
Mineola, NY 11501
      By: Assistant Attorney General Ralph Pernick

**SPATT, District Judge.**

      On November 14, 2011, the Plaintiff Robert S. Buckley (the "Plaintiff"), a former

bus driver for the Defendant State University of New York ("SUNY") from the

beginning of 2004 until his termination in June 2010, commenced this action against

SUNY and related parties for violations of several federal laws.  In addition, the Plaintiff

brought several New York State law causes of action, including breach of contract, quasi-

contract, gross negligence, and intentional and negligent infliction of emotional distress.

In its original Memorandum of Decision and Order dated September 29, 2012 (the "Order"), the Court dismissed some of the Plaintiff's federal discrimination and retaliation claims, including the Plaintiff's state law causes of action with prejudice. The Court allowed the Plaintiff to amend his Complaint as to the causes of action that were dismissed without prejudice.

Presently before the Court is the Defendant's motion to dismiss the Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the Court grants the Defendants' motion to dismiss.

## I. BACKGROUND

The Court assumes that the parties are familiar with the background of this case and the Order dismissing the original Complaint. (Mem. of Decision and Order 1-36). Accordingly, the Court will only repeat those facts and portions of the Order relevant to the present motion to dismiss.

### A. Facts in the Original Complaint

The Plaintiff, a 62 year old male, was employed by SUNY as a bus driver "on or about 2004." The individual Defendants are all employees of SUNY and according to the original Complaint, each of them supervised the Plaintiff. Each individual Defendant therefore had the power to make personnel decisions regarding the Plaintiff's employment. (Mem. of Decision and Order, at 2).

In July 2006, the Plaintiff was passed over for promotion to a "Transportation Supervisor." On November 29, 2006, the Plaintiff received his annual performance

evaluation, in which he received a satisfactory performance rating from the Defendant James O'Connor ("O'Connor"), the Director of Transportation and Parking Services at SUNY.  However, approximately a year later, on November 13, 2007, the Plaintiff received notice that he was not selected as a full time bus driver.  (Mem. of Decision and Order, at 2).

In October 2008, the Plaintiff was appointed as Shop Steward of the Civil Service Employees Association, Inc. ("CSEA") Local 614.  (Id).  During his employment at SUNY, the Plaintiff was a member of the CSEA union, which is covered under a contract between the Executive Branch of the State of New York ("the State") and the CSEA. (Complaint, at ¶ 23).  As Shop Steward, the Plaintiff was responsible for dealing with "issues relating to the safe operation and transport of individuals both on and off the Campus of Stony Brook University in addition to monitoring compliance with the Agreement between CSEA and the State of New York."  Defendants' Notice of Motion to Dismiss, at A6.  The Plaintiff also was called upon to "file grievances aimed at safeguarding the health and safety of not only the employees who operate the busses but the thousands of students who are daily passengers of the University's Transit System." Id.

In a letter dated August 9, 2010 from the Plaintiff to CSEA President Daniel Danohue, Long Island President Nick Lamonte, and Local 614 CSEA President Carlos Speight, the Plaintiff lists several issues that he was called upon as Shop Steward "to address."  Id.  However, in the letter itself, the Plaintiff fails to explicitly state that he filed any grievances on behalf of his co-workers.  Id.

The Plaintiff contends that "[the Defendant Samantha Thomas] misused counseling memoranda to intimidate employees and silence discussion on contractual and safety issues." Id. at A8.  To support his contention, the Plaintiff describes several incidents that occurred between the Plaintiff's co-workers and Thomas.  Id. at A6.  The Plaintiff states that, in May 2009, Mr. Carlos Speight filed a class action grievance alleging that the Defendant Samantha Thomas ("Thomas") and O'Connor failed to "provide the employees with the requisite instruction and equipment necessary to safely use [the], 'new soap.'" Id. at A7.  The employees used this potentially toxic "new soap" to clean the buses.  Id.  However, the Plaintiff admits that, shortly after the grievance was filed, the use of the "new soap" was stopped.  Id. at A8.

Furthermore, in March 2009, a grievance was filed for or by SUNY employee Yvonne Caraftis to Thomas.  Id. at A9.  On a similar matter, in September 2009, a grievance was filed for or by SUNY employee Joe Mammina to Thomas.  Id.  In both instances, a counseling memorandum was issued to Yvonne Caraftis and Joe Mammina in order to resolve and help settle the matter.  Id.

The Plaintiff asserts that, prior to his appointment to Shop Steward, he never received any disciplinary or counseling memoranda.  (Mem. of Decision and Order, at 2). The Plaintiff alleges that, after accepting the appointment, the Defendants subjected him to ongoing harassment and retaliation with malice. (Mem. of Decision and Order, at 2).

However, on November 10, 2008, after his appointment as shop steward, the Plaintiff received a satisfactory annual performance evaluation from Thomas.  (Mem. of Decision and Order, at 3).  On November 30, 2009, the Plaintiff again received a

satisfactory annual performance evaluation from Thomas.  (Mem. of Decision and Order, at 3).

A few months later, on February 16, 2010, James Guarino ("Guarino"), a non-party Transportation Supervisor for SUNY, issued to the Plaintiff his first counseling memorandum.  The memorandum describes an incident in which the Plaintiff allegedly backed his bus into a skid steer loader and cracked a taillight.

On February 23, 2010, Guarino issued a second counseling memorandum to the Plaintiff, in connection with allegations that the Plaintiff allowed passengers to stand in his bus.  (Mem. of Decision and Order, at 3).

On April 27, 2010, the Plaintiff submitted an internal discrimination complaint to SUNY, alleging age and gender discrimination by O'Connor and Thomas.  (Mem. of Decision and Order, at 3).  In the complaint, the Plaintiff notes that he was denied a fair grade, training, equal treatment, and a promotion because "of [his] Shop Steward duties." (Defendants' Notice of Motion to Dismiss, at A26).  He further states that this discrimination manifested itself through "petty write-ups from James O'Connor to form a paper trail."  Id.

On June 15, 2010, Guarino issued the Plaintiff's third counseling memorandum with regard to the Plaintiff's alleged improper actions during a vehicle breakdown. (Mem. of Decision and Order, at 3).  In response, on June 21, 2010, in an unaddressed memorandum, the Plaintiff stated that he did not understand why he was being reprimanded for trying to fix the situation as best as possible.  The Plaintiff repeated that "I feel that [the counseling memoranda are] being done so that management can get a paper trail on me to fire me because I am a CSEA union shop steward."  Defendants'

Notice of Motion to Dismiss, at A34.

The next day, on June 22, 2010, the Plaintiff was issued a termination notice signed by the Defendant Lynn M. Johnson ("Johnson"), Director of Human Resource Services for SUNY, which stated that his employment would be terminated effective July 7, 2010.  (Mem. of Decision and Order, at 3).

**B. Procedural History as to the Original Complaint**

On July 10, 2010, the Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR").  On September 28, 2011, the NYSDHR issued a Determination and Order stating that it had found no probable cause, and dismissed the complaint.

On November 14, 2011, the Plaintiff Buckley commenced the present lawsuit against the State of New York, SUNY, Samuel L. Stanley Jr., Mark Murphy, Samantha Thomas, James O'Connor, Terrence Harrigan, Barbara Chernow, and Lynn M. Johnson. The Plaintiff alleged what the Defendants characterize as a "kitchen sink" approach, asserting twenty causes of action:

(1)–(8) Retaliation due to the Plaintiff's speech in violation of 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and "State Civil Rights Law" against all the Defendants.

(9) Wrongful termination in breach of contract against all the Defendants

(10) The Plaintiff's tenth cause of action is primarily a list of laws allegedly violated by all the Defendants. The laws listed are:

(a) 42 U.S.C. § 1981;
(b) Title VII of the Civil Rights Act of 1964 ("Title VII");
(c) Age Discrimination in Employment Act of 1967 ("ADEA");
(d) § 115 of the Civil Rights Act of 1991;
(e) New York State Human Rights Law, New York Executive Law §§ 291(1);
(f) Americans with Disabilities Act of 1990 ("ADA");

(g) First Amendment to the United States Constitution;
(h) Fourteenth Amendment to the United States Constitution;
(i) New York Constitution Art I §§ 8 & 11;
(j) New York State Plan for Public Employee Safety and Health
("PESH"); (k) New York State Law Labor §§ 27(a), 215 & 740;
(l) 49 U.S.C. §§ 31005(a)(1)(A) & 31101;
(m) New York State Civil Service § 64;
(n) "Federal OSHA statutes and regulations";

(11) Tortious interference with contract against all the Defendants;

(12) Hostile work environment and retaliation against all the Defendants;

(13) Breach of contract and quasi contract against all the Defendants;

(14) Recklessness against all the Defendants;

(15) Gross negligence against all the Defendants;

(16) Prima facie tort against all the Defendants;

(17) Age discrimination in violation of Federal law against all the Defendants;

(18) Age discrimination in violation of State law against all the Defendants;

(19) Intentional infliction of emotional distress against all the Defendants;

(20) Negligent infliction of emotional distress against all the Defendants.

On January 23, 2012, the Defendants moved to dismiss the Original Complaint
pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R.
Civ. P. 12(b)(6) for failure to state a claim.  (Mem. of Decision and Order, at 3-4).

**C. The Court's Original Memorandum of Decision and Order**

On September 29, 2012, the Court dismissed all of the Plaintiff's causes of action,
some with prejudice and some without prejudice, based upon the provision of Fed. R.
Civ. P. 12(b)(6) and 12(b)(1).  (Mem. of Decision and Order, at 35-36).

First, the Court found that many of the Plaintiff's causes of action were barred
due to the Eleventh Amendment and the doctrine of sovereign immunity. (Mem. of

Decision and Order, at 6-17).  As the Court stated, the Eleventh Amendment bars federal "jurisdiction over suits against non-consenting States." (Mem. of Decision and Order, at 6-7).  The Court also noted that sovereign immunity extends to State entities such as SUNY and State employees.  (Mem. of Decision and Order, at 7).

Regarding the individual State employees, the Court noted that it was unclear whether the Plaintiff sought monetary compensation against the individual Defendants in their official or individual capacities.  (Mem. of Decision and Order, at 7).  Therefore, the Court addressed the Complaint as seeking monetary damages against the individual Defendants in both their official and individual capacities.  (Mem. of Decision and Order, at 8).

As to the individual Defendants' in their official capacities, the Court found that the causes of action were barred under the Eleventh Amendment.  (Mem. of Decision and Order, at 8).  The Court found that none of the exceptions to the general of rule of immunity applied in this case. (Mem. of Decision and Order, 9).

Specifically, the Court dismissed the Plaintiff's 42 U.S.C. § 1983 cause of action without prejudice due to the sovereign immunity doctrine under the Eleventh Amendment.  The Court reasoned that the Eleventh Amendment deprived the Court of subject matter jurisdiction over §1983 claims brought against the State, SUNY, and the individual Defendants sued in their official capacities. (Mem. of Decision and Order, at 10–11).

As for the Plaintiff's 42 U.S.C. § 1981 claims against all of the Defendants, the Court again found that the Eleventh Amendment barred the claims against the State, SUNY, and the individual Defendants in their official capacities. (Mem. of Decision and

Order, at 12).

Regarding the Plaintiff's Age Discrimination in Employment Act of 1967 ("ADEA") claims against all of the Defendants, the Court found that the Eleventh Amendment also barred those claims. (Mem. of Decision and Order, at 13). In this regard, the Court found that the ADEA did not abrogate the State's sovereign immunity nor had New York State consented to be sued under the ADEA. (Mem. of Decision and Order, at 13). The Court concluded that the Plaintiff's claims did not fall under any of the general immunity exceptions, and therefore dismissed the Plaintiff's ADEA claims without prejudice against the State, SUNY, and the individual Defendants in their official capacities. (Mem. of Decision and Order 13-14).

As for the Plaintiff's Americans with Disabilities Act of 1990 ("ADA") claims against all of the Defendants, the Court found that the Eleventh Amendment barred the those claims as well. (Mem. of Decision and Order, at 16).

Moreover, with respect to Title II of the ADA, which deals with discrimination in public services, programs, and activities, the Court agreed with the recent trend of cases that held that public employees may not pursue employment discrimination claims under Title II. (Mem. of Decision and Order, at 15-16). As such, the Court dismissed the Plaintiff's ADA claims against the State, SUNY and the individual Defendants in their official capacities without prejudice. (Mem. of Decision and Order, at 16).

The Court then discussed the Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), ADA, and ADEA against the individual Defendants in their individual capacities. (Mem. of Decision and Order, at 17). The Court dismissed these federal causes of action against the individual Defendants because these statutes do not

provide for individual liability.  (Mem. of Decision and Order, at 17).  Regarding the Plaintiff's Title VII claim, the Court held that an individual defendant cannot be held personally liable under Title VII.  (Mem. of Decision and Order, at 17).

Concerning the Plaintiff's ADA and ADEA claims, the Court similarly found that an individual defendant cannot be held personally liable under either statute. (Mem. of Decision and Order, at 18).  Therefore, the Court dismissed the Title VII, ADA, and ADEA claims against the Defendants Stanley, Murphy, Thomas, O'Conner, Harrigan, Chernow, and Johnson with prejudice.  (Mem. of Decision and Order, at 18).

As for the Plaintiff's claims under 1991 Civil Rights Act, 49 U.S.C. § 115 and§§ 31105(a)(1)(A) & 31101, under the Commercial Motor Vehicle Safety Act of 1986, and the federal Occupational Safety and Health Administration ("OSHA") claims, the Court dismissed each of these claims against all of the Defendants with prejudice because they were facially deficient.  (Mem. of Decision and Order, at 18-19).  The Court noted that § 115 of the 1991 Civil Rights Act does not provide an independent cause of action distinct from an ADEA claim. (Mem. of Decision and Order, at 18).  Furthermore, the Court found that States, their agencies, and their employees are excluded from 49 U.S.C. §§ 31105(a)(1)(A) & 31101 under the provisions of the Commercial Motor Vehicle Safety Act of 1986.  (Mem. of Decision and Order, at 19).  The Court also stated that OSHA claims cannot support a private right of action. (Mem. of Decision and Order, at 19).  Therefore, all three of these claims were dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). (Mem. of Decision and Order, at 36).

Furthermore, as stated before, the Court dismissed the Plaintiff's 42 U.S.C. § 1981 claims against the State, SUNY, and the individual Defendants in their official

capacities under the Eleventh Amendment. (Mem. of Decision and Order, at 12-13).  The Court thereafter had to address the Plaintiff's § 1981 claims in regards to the individual Defendants in their individual capacities. (Mem. of Decision and Order, at 20).  The Court dismissed the § 1981 claims against the individual Defendants in their individual capacities because the Complaint failed to allege any factual allegations to support intentional racial discrimination.  (Mem. of Decision and Order, at 20).  Therefore, the court dismissed the Plaintiff's § 1981 claim without prejudice under Fed. R. Civ. P. 12(b)(6).  (Mem. of Decision and Order, at 20, 35-36).

Concerning the Plaintiff's 42 U.S.C. § 1983 claims, as noted above, the Court dismissed those claims against the State, SUNY, and the individual Defendants in their official capacities without prejudice.  (Mem. of Decision and Order, at 11).  Pertaining to the Plaintiff's § 1983 claims against the individual Defendants in their individual capacities, the Court also dismissed the Plaintiff's claims without prejudice.  (Mem. of Decision and Order, at 21-28).  The central issue for the Court was whether the Plaintiff adequately plead that the individual Defendants in their individual capacities acted in such a way that their conduct deprived the Plaintiff of a right guaranteed under the Constitution of the United States.  (Mem. of Decision and Order, at 21-22).  Because the Plaintiff brought the § 1983 claims based on allegations of retaliation for speech protected by the First Amendment, the Court addressed the three-part test for such a cause of action.  (Mem. of Decision and Order, at 22).

As explained by the Court, a plaintiff pleads the three-part test for a *prima facie* First Amendment retaliation case when he can show that 1) he engaged in constitutionally protected speech because he spoke as a citizen on a matter of public

11

concern; (2) he suffered an adverse employment action; and (3) the speech at issue was a substantial or motivating factor in the decision.  (Mem. of Decision and Order, at 22).  The Court determined that the Plaintiff adequately plead the speech prong of the three–part test.  (Mem. of Decision and Order, at 23).  However, the Court concluded that the Plaintiff failed to show a causal connection between his protected speech as a Shop Steward and any adverse employment action.  (Mem. of Decision and Order, at 23-27).

In the Court's view, the time between the Plaintiff's appointment to Shop Steward in October 2008 and his first counseling memorandum in 2010 was too large a gap to establish a retaliatory motive.  (Mem. of Decision and Order, at 25).  The Court therefore found that the Plaintiff could only rely upon temporal proximity and concluded that temporal proximity alone was not enough to survive a motion to dismiss.  (Mem. of Decision and Order, at 24). Accordingly, the Court dismissed the Plaintiff's § 1983 claims against the Defendants in their individual capacities without prejudice.  (Mem. of Decision and Order, at 26).

The Court also found that the Complaint, "[o]ther than identifying the various positions held by the seven individual defendants," failed to allege facts in the Complaint as to what each one of them purportedly did. (Mem. of Decision and Order, at 27).  However, the Court concluded that the Plaintiff met this minimum burden with regard to Thomas, O'Connor, and Johnson.  (Mem. of Decision and Order, at 27).   In particular, the Court found that Johnson signed the letter that informed the Plaintiff that he was going to be terminated; and O'Connor and Thomas were both the Plaintiff's supervisor who were directly involved with the Plaintiff's work assignments and his subsequent evaluations and counseling memorandums.  (Mem. of Decision and Order, at 27-28).

With respect to the Title VII claims against New York State and SUNY, the Plaintiff alleged unlawful discrimination, harassment, and retaliation based on his age, disability, race, and gender.  The Court first noted that neither age nor disability is a protected class under Title VII.  (Mem. of Decision and Order, 28).  As to the Plaintiff's race and gender claims, the Court found that his pleadings were conclusory statements of discriminatory actions rather than specific facts.  (Mem. of Decision and Order, at 29). The Court concluded that there were no specific examples alleged of (1) either discriminatory animus on the part of the Defendants toward the Plaintiff nor (2) members not in his alleged protected class receiving more favorable treatment than he did.  (Mem. of Decision and Order, at 29).  Accordingly, the Court dismissed the Plaintiff's Title VII claims against New York and SUNY under Fed. R. Civ. P. 12(b)(6) without prejudice. (Mem. of Decision and Order, at 30).

The Court also dismissed the Plaintiff's hostile work environment action pursuant to Fed. R. Civ. P. 12(b)(6) without prejudice.  (Mem. of Decision and Order, at 35). The Court found that the Plaintiff failed to allege facts that would plausibly show that he suffered in a hostile work environment.  (Mem. of Decision and Order, at 35).  The Court directed the Plaintiff to allege more specific facts to support his hostile work environment claim in his Amended Complaint.  (Mem. of Decision and Order, at 35).

Finally, as to the state law claims against all of the Defendants, the Court dismissed them with prejudice. (Mem. of Decision and Order, at 30).  The Court noted that a plaintiff may not file a claim with the NYSDHR, and bring a subsequent judicial action based on the same incident under § 297(9) of the New York Executive Law. (Mem. of Decision and Order, at 30). The Court determined that it lacked subject matter

jurisdiction in regards to the Plaintiff's state law claims because the Plaintiff brought

claims based on the same incident which the NYSDHR previously dismissed.  (Mem. of

Decision and Order, at 32).

 In sum, the Court allowed the Plaintiff to file an Amended Complaint with more

detailed factual allegations to support his § 1983 and § 1981 allegations against the

individual Defendants in their individual capacities, and Title VII, ADEA, and ADA

against all of the Defendants.  (Mem. of Decision and Order, at 35).

**C. Facts in the Amended Complaint**

 The Plaintiff's Amended Complaint is virtually identical to the Plaintiff's original

Complaint except for three substantive changes.

 First, the Plaintiff omitted all causes of action that were dismissed with prejudice

by the Court's original Order.  (Amended Complaint, at 4a.)

 Second, the Plaintiff elaborates on the chain of command of the individual

Defendants and pleads specific allegations on a defendant-by-defendant basis.  (Id. at 7a-

7i.)  In relation to Defendant Thomas, the Plaintiff explains his actions as Shop Steward

including the complaints he made and objections he raised to Defendant Thomas in

several different meetings in 2009 and 2010.  (Id. at 7b.)  The Plaintiff alleges that after

he voiced his objections as Shop Steward, the individual Defendants acted in concert with

each other and with malice to retaliate against him and wrongfully terminate him.

 In this regard, the Plaintiff alleges that:

 (1) O'Connor wrote false write-ups to create a paper trail for wrongful

termination; (2) Johnson willfully and maliciously denied his applications for several

positions; (3) Harrigan was present for the August 21, 2009 meeting with Defendant

Thomas, where the Plaintiff complained about seniority determination and was thereafter subjected to ongoing harassment; (4) Stanley ignored his request for a review of his wrongful termination; (5) Chernow ignored his request to investigate his wrongful termination and refused to investigate the false write-ups; and (6) Murphy denied him overtime, created a false paper trail to support his wrongful termination, and retaliated against him for his protected activities resulting in a wrongful termination and retaliation. (Id. at 7c-7i.)

Third, the Plaintiff adds a new exhibit "A1", which describes certain incidents that occurred with the individual Defendants.  (Id. at A1-13.)  In exhibit A1, the Plaintiff states that Defendant Thomas treated him differently than the other bus drivers.  The Plaintiff alleges that Thomas told the Plaintiff not to park near a pole, while other bus drivers thereafter parked near the pole without reprimand.  Furthermore, the Plaintiff alleges that Thomas "verbally counseled" the Plaintiff for leaving keys in a bus, but at the same time other bus drivers took keys home and Defendant Thomas did not "verbally counsel" those bus drivers.  (Id. at A1-5)  The Plaintiff also claimed that Defendant Thomas favored other employees.  The Plaintiff states that these incidents were retaliatory actions with regard to his union membership and appointment to Shop Steward.  Id. at A1.

## II. LEGAL STANDARDS

### A. As to a Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The standard for

reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113.

## B. Legal Standard on a Motion to Dismiss for Failure to State a Claim

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 570 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at 72 (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's

favor. <u>Zinerman v.Burch</u>, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100

(1990); <u>In re NYSE Specialists Secs. Litig.</u>, 503 F.3d 89, 91 (2d Cir. 2007). Only if this

Court is satisfied that "the complaint cannot state any set of facts that would entitle the

plaintiff to relief" will it grant dismissal pursuant to Rule 12(b)(6). <u>Hertz Corp. v. City of

N.Y.</u>, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." <u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 198 (2d Cir. 2001) (quoting

<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

### III. DISCUSSION

### A. As to the Plaintiff's 42 U.S.C. § 1981 Claims

As the Court has previously observed, the Plaintiff's § 1981 claims against New

York State, SUNY, and the individual Defendants in their official capacities are barred

by the 11th Amendment. The Eleventh Amendment bars federal jurisdiction over suits

against non-consenting States. <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 73, 120 S. Ct.

631, 640, 145 L. Ed. 2d 522 (2000) (citing <u>College Sav. Bank v. Fla. Prepaid

Postsecondary Ed. Expense Bd.</u>, 527 U.S. 666, 669–70, 119 S. Ct. 2219, 144 L. Ed. 2d

605 (1999)); <u>see also</u> <u>Wang v. Office of Professional Medical Conduct</u>, N.Y., 354 Fed.

Appx. 459, 460 (2d Cir. 2009) ("The district court correctly determined that Wang's §

1981 claim was precluded by Eleventh Amendment immunity.").

As for the Plaintiff's § 1981 claims against the individual Defendants in their

individual capacities, the "plaintiff must demonstrate some affirmative link to causally

connect the actor with the discriminatory action." <u>Patterson v. County of Oneida, N.Y.</u>,

375 F. 3d 206, 229 (2d. Cir. 2004) (quoting <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>,

233 F. 3d  62, 75 (2d. Cir. 2000)).  42 U.S.C. § 1981 deals with racial discrimination,

protecting all persons within jurisdiction of the United States the same right to make and

enforce contracts with respect to contractual relationships such as employment.  42

U.S.C. § 1981.

     Here, the Court finds that the Plaintiff has not adequately plead enough specific

facts that affirmatively link the actions of the individual Defendants with any racial

discriminatory action. See also Hailey v. Conn., No. 03-CV-1787, 2011 WL 6209748, at

*4 (S.D.N.Y. Dec. 14, 2011) ("Plaintiff's complaint includes no allegations of

discriminatory animus as required to sustain a claim under 42 U.S.C. § 1981"); Patterson,

375 F. 3d at 221 ("the plaintiff has failed to show that there is evidence that would permit

a rational factfinder to infer that the employer's proffered rationale is pretext").

     In both the Amended Complaint and the accompanying exhibits, the Plaintiff fails

to even identify his race.  Further, the Plaintiff fails to address any specific example of

where an individual Defendant discriminated against the Plaintiff based on race.

Therefore, the Plaintiff's § 1981 claims against the individual Defendants in their

individual capacities are dismissed for a failure to "state a claim to relief that is plausible

on its face."  Aschcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); see

also Patterson, 375 F. 3d at 229 ("[P]ersonal liability under section 1981 must be

predicated on the actor's personal involvement."); Patterson, 375 F. 3d at 226 ("plaintiff

pursuing a claimed violation of § 1981 . . . must show that the discrimination was

intentional.").

     Moreover, even if the Defendant properly plead specific facts to show racial

discrimination, the courts have determined that § 1983 "constitutes the exclusive federal

remedy for violation of the rights guaranteed in § 1981 by state governmental units."
Patterson, 375 F. 3d at 225 (quoting Jett v. Dallas Independent School Dist., 491 U.S.
701, 733, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).  This principle has been extended
to state employees sued in their individual capacities such as the individual Defendants in
this case. See also Rehman v. State University of New York at Stony Brook, 596 F. Supp.
2d 643, 654 (E.D.N.Y. 2009) (Spatt, J.) ("Courts have interpreted this prohibition
[against bringing an independent § 1981 claim with a separate § 1983 claim] to extend to
actions against individual defendants in their individual capacities.").

**B. As to the Plaintiff's Title VII's claims**

As previously stated, the Court dismissed the Title VII claims against the
individual Defendants because Title VII does not support individual liability.  Schiano v.
Quality Payroll Sys., 445 F.3d 597, 608, fn. 8 (2d Cir. 2006); Tomka v. Seiler Corp., 66
F.3d 1295, 1313– 14 (2d Cir. 1995), abrogated on other grounds by Burlington Indus. v.
Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) ("individual defendants
with supervisory control over a plaintiff may not be held personally liable under Title
VII.").

However, the Court must address the Plaintiff's Title VII claims against New
York State and SUNY.  Title VII prohibits employers from "discriminat[ing] against any
individual with respect to his compensation, terms, conditions, or privileges of
employment, because of such individual's race, color, religion, sex, or national origin."
42 U.S.C. § 2000e–2(a)(1).  In order to establish a *prima facie* Title VII claim, the
Plaintiff must show that (1) [he] is a member of a protected class; (2) [he] was qualified
for her position and satisfactorily performed [his] duties; (3) [he] suffered an adverse

employment action; and (4) the circumstances surrounding that action giving rise to an inference of discrimination.  Sank v. City University of New York, No. 10 Civ. 4975, 2011 WL 5120668, at *8 (S.D.N.Y. Oct. 28, 2011) ((citing Williams v. R.H. Donnelly, 368 F.3d 123, 126 (2d Cir. 2004).

At issue in this case is whether the Plaintiff has pleaded enough specific facts to meet this fourth prong.  To satisfy the requirements of the fourth prong, the plaintiff must allege facts "sufficient to plausibly suggest [a defendant's] discriminatory state of mind" and "conclusory allegations are not entitled to the presumption of truth." Id. at *9 (citing Iqbal, 129 S. Ct. at 1949–52).  In the Court's view, the Plaintiff has failed to allege enough specific facts to plausibly suggest that New York State or SUNY maintained a discriminatory state of mind.  In the accompanying exhibits, the Plaintiff highlighted certain situations where his supervisors treated other employees differently.  The Plaintiff states that Thomas allowed others to park their vehicles near a pole, but reprimanded the Plaintiff for doing so.  However, one of the other bus drivers was a male and therefore the alleged different treatment could not reasonably have been motivated by gender. The Plaintiff also noted that Thomas favored certain female employees with respect to the employee's time charges, but failed to mention how their treatment differed from his own treatment. See Texas Dep. Of Community Affairs v. Burdine, 450 U.S. 248, 259, 101 S. Ct. 1089 (1981) (("the statute [Title VII] was not intended to 'diminish traditional management prerogatives'"), quoting Steelworkers v Weber, 443 U.S. 193, 207 99 S. Ct. 2721, 2729, 61 L. Ed. 2d 480 (1979)).

Furthermore, the Plaintiff failed to plead specific comments made to or about him by any of the individual Defendants. See also Sank, 2011 WL 5120668 at *9 (dismissing

Title VII claim where no "decision-maker at City College made comments to or about

[the Plaintiff] from which discriminatory animus based on gender could reasonably be

inferred"); Watts v. Servs. for the Underserved, 2007 U.S. Dist. LEXIS 41209, at *8,

2007 WL 1651852 (E.D.N.Y. 2007) (noting that a plaintiff must allege "a modicum of

facts regarding the adverse action and the disparate treatment involved.").  Therefore, the

Court grants the motion to dismiss the Plaintiff's Title VII claims against New York State

and SUNY due to the Plaintiff's inability to allege sufficient "facts to state a claim to

relief that is plausible on its face." Twombly, 550 U.S. at 570.

**C. As to the Plaintiff's ADA and ADEA Claims**

The Court previously found that sovereign immunity and the Eleventh

Amendment bar the Plaintiff's ADA and ADEA claims against New York State, SUNY,

and the individual Defendants in their official capacities.  Specifically, courts have held

that ADA and ADEA claims for monetary damages are barred against a State and State

entities.  Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 360, 121

S. Ct. 955; Kimel, 528 U.S. at 91. In this case, the Plaintiff only seeks monetary damages

against the Defendants.

As for the Plaintiff's ADA and ADEA claims against the individual Defendant's

in their individual capacities, the Court finds that the ADA and ADEA statutes do not

support individual liability. See e.g., Darcy v. Lippman, 356 Fed. App'x. 434, 437 (2d

Cir. 2009) ("Darcy may not sue these defendants in their personal capacities, because the

ADA and ADEA, like Title VII, do not provide for actions against individual

supervisors.").  Therefore, the Court grants the motion to dismiss the Plaintiff's ADA and

ADEA claims against all of the Defendants pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.

**D. As to the Plaintiff's 42 U.S.C. § 1983 Claims**

As stated previously, the Court finds that the 11th Amendment bars the § 1983 claims against the State, SUNY, and the individual Defendants in their official capacities. Mamot v. Bd. Of Regents, 367 Fed. App'x. 191, 192 (2d Cir. 2010) ("The Eleventh Amendment bars such a federal court action against a state or its agencies absent a waiver of immunity or congressional legislation specifically overriding immunity"); Brewer v. Brewer, 34 Fed. App'x. 28, 29-30 (2d Cir. 2002) ("First Amendment claims against the State of New York pursuant to § 1983 are barred by the Eleventh Amendment since New York State has not consented to be sued.").  However, the Court must still address whether, in the Amended Complaint, the Plaintiff adequately states a § 1983 claim against the individual Defendants in their individual capacities.

To prove a § 1983 claim, a plaintiff must show that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."  Snider v. Dylag, 188 F. 3d 51, 53 (2d Cir. 1999).  Here, both parties agree that the individual Defendants were acting under color of state law.  However, the issue is whether the Defendants' conduct deprived the Plaintiff of the rights guaranteed to him under the First Amendment.

In order for a public employee to bring a § 1983 claim based on allegations of retaliation for speech protected by the First Amendment, the Plaintiff must meet the three-part test articulated in Johnson v. Ganim, 342 F. 3d 105 (2d Cir. 2003). See Martir v. City of New York, No. 07-CV-7922, 2009 WL 2191332, at *5 (S.D.N.Y. July 23,

2009).  The three-part test requires the Plaintiff to show that (1) he engaged in constitutionally protected speech because he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) the speech at issue was a substantial and motivating factor in the decision.  Johnson, 342 F. 3d at 112.

The Supreme Court has stated that "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Connick v. Myers, 461 U.S. 138, 147-48, 103 S. Ct. 1684 (1983).  This determination is a question of law for the Court to make.  Id.  In making that determination, the factfinder "should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had broader public purpose."  Lewis v. Cowen, 165 F. 3d 154, 163-64 (2d Cir. 1999) (citing Curtis v. Oklahoma City Pub. Sch. Bd. of Educ., 147 F. 3d 1200, 1212 (10th Cir. 1998)).  However, the speakers' motive is not totally dispositive.  Cioffi v. Averill Park Central School District Board of Education, 444 F. 3d 158, 165-66 (2d Cir. 2006).  In other words, "it does not follow that a person motivated by personal grievance cannot be speaking on a matter of public concern."  Sousa, 578 F. 3d at 174.

Therefore, even though the Plaintiff's motives were personal, the Court finds that the Plaintiff's speech as a public employee was made as a citizen on a matter of public concern.  The Court concludes that the Plaintiff's speech in his role as Shop Steward was made "pursuant to [his] official duties."  Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951 (2006).  Also, the Court finds that the Plaintiff's union membership satisfies the public concern requirement.  See also Donovan v. Inc. Village of Malverne, 547 F. Supp. 210, 218 (E.D.N.Y. 2008) ("several courts have determined that union membership in

and of itself satisfies the public concern requirement.").  Moreover, the Second Circuit
has held that "[t]here is no doubt that retaliation against public employees solely for their
union activities violates the First Amendment."  Clue v. Johnson, 179 F. 3d 57, 60 (2d
Cir. 1999).  Accordingly, the Court finds that the Plaintiff has adequately plead the first
prong of the Johnson v. Ganim three part test.  342 F.3d at 112.

 Nonetheless, even though the Plaintiff participated in protected speech, the Court
finds that he cannot show a causal connection between his conduct and any alleged
adverse employment action.  For the Plaintiff to show that his speech was a substantial or
motivating factor in the decision to terminate him, he must show a causal connection
between the speech and the adverse employment action.  Morris v. Lindau, 196 F. 3d
102, 110 (2d Cir. 1999).  Such a causal connection can be established either by direct
evidence, circumstantial evidence, or by showing a temporal proximity of the protected
speech and the adverse employment action.  See Raniola v. Police Commissioner
William Bratton, 243 F. 3d 610, 626 (2d Cir. 2001); Morris, 196 F. 3d at 110; Donovan,
547 F. Supp. 2d at 218 (citing Woods v. Enlarged City Sch. Dist., 473 F. Supp. 2d 498
(S.D.N.Y. 2007).

 In this regard, the Court finds that the Plaintiff relies only upon temporal
proximity to support his allegations of First Amendment retaliation.  In particular, the
Plaintiff pleads that he was appointed as Shop Steward in October 2008 and received his
first counseling memorandum on February 16, 2010.  "[A] plaintiff can indirectly
establish a causal connection to support a discrimination or retaliation claim by 'showing
that the protected activity was closely followed in time by the adverse [employment]
action."  Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F. 3d

545, 554 (2d Cir. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F. 3d 1170, 1178 (2d Cir. 1996)).

However, as decided in the Order, the gap between the appointment and the counseling memorandum is too large to establish a retaliatory motive by the individual Defendants. See also Espinal v. Goord, 558 F. 3d 119, 129 (2d Cir. 2009) ("allow [the] Court to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases."); cf. Richardson v. N.Y. State Dep't of Corr. Serv., 180 F. 3d 426, 446-47 (2d Cir. 1999) (acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); Grant v. Bethlehem Steel Corp., 622 F. 2d 44, 45-46 (2d Cir. 1980) (an eight month gap between EEOC complaint and retaliatory act suggested causal relationship).

Furthermore, courts have held that "if the alleged retaliatory behavior pre-existed the protected activity, the plaintiff must provide some evidence of ratcheting up or increased harassment to succeed." Boumehdi v. Plastag Holdings, LLC, 489 F. 3d 781, 793 (7th Cir. 2007).

In this case, the Plaintiff was already passed over for promotions before his appointment to Shop Steward. See also Hall v. Parker Hannifan Corp., 824 F. Supp. 2d 464, 470 (W.D.N.Y. 2009) ("if the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory behavior."). Further, the Court finds that the Plaintiff failed to plead a "ratcheting up" or "increased harassment" beyond mere vague conclusory allegations.

The Plaintiff points to the counseling memoranda he received on February 16, 2010, February 23, 2010, and June 15, 2010 and to his termination in July 2010 as evidence of "increased harassment."  However, such temporal proximity alone is insufficient to show a connection between the Plaintiff's protected speech and his alleged adverse employment action.  The Plaintiff fails to use the opportunity to plead more specific allegations of the individual Defendants retaliating against him for his role as a Shop Steward.  In fact, the Plaintiff received satisfactory evaluations on November 10, 2008 and November 30, 2009, which occurred after his appointment to Shop Steward. Similar to the Plaintiff's Original Complaint, the Plaintiff includes only vague conclusory allegations of harassment, retaliation, and discrimination.  Therefore, the Court dismisses the Plaintiff's § 1983 causes of action against the individual Defendants in their individual capacities because the Plaintiff failed to show a causal connection between his protected speech and any adverse employment action.

As for the Plaintiff's hostile work environment claim, it is unclear whether the Plaintiff is using Title VII or § 1983 as his statutory vehicle.  Nevertheless, the same analysis is used for either statute.  See Smith v. Town of Hempstead Dept. of Sanitation Dist. No. 2, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under Title VII, Section 1981, Section 1983 and the New York State Human Rights Law is essentially the same.").

First, as a threshold matter, the Plaintiff must show that he is a member of a protected class and that he "was subjected to the hostility because of [his] membership in [that] protected class." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir.1999).  Once this threshold is met, the Plaintiff "must plead facts that would tend to

show the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and punctuation omitted), citing Gregory v. Daly, 243 F.3d 687, 691–92 (2d Cir. 2001).

In general, to prevail on a hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotations omitted).  In determining whether a work environment is hostile, the Court assesses the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 119 (2d Cir. 2010) (internal quotation marks omitted); accord Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004).  Specifically, for a 12(b)(6) motion, a "plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Pantane v. Clark, 508 F. 3d 106, 113 (2d Cir. 2007).

Applying those principles here, the Court finds that the Plaintiff has failed to meet his 12(b)(6) burden in regards to a hostile work environment action.  There is no specific allegation made or example proffered of a hostile work environment action by any of the

individual Defendants.  Rather, the Plaintiff only pleads vague conclusory allegations as to the individual Defendants' contribution to the workplace atmosphere.  Therefore, based on the totality of the circumstances, the Court concludes that the Amended Complaint is not sufficient to allege that the Plaintiff faced harassment of such a high quality or quantity that he could plausibly state a claim of a hostile work environment under § 1983 or Title VII.

Accordingly, the Court need not need to address whether the underlying events referenced by the Plaintiff are time-barred by New York State's three-year statute of limitations in regards to either the Plaintiff's Title VII or § 1983 claims.  Owens v. Okure, 488 U.S. 235, 251, 109 S. Ct. 573, 582, 102 L. Ed. 2d 594 (1989).

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendants' motion to dismiss the Amended Complaint is granted and the Amended Complaint is dismissed with prejudice; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.


SO ORDERED.
Dated: Central Islip, New York
August 7, 2013

_____ *Arthur D. Spatt* _____
ARTHUR D. SPATT
United States District Judge

28